934 F.2d 1048
 UNITED STATES of America, Plaintiff-Appellee,
v.
Wilfried VAN CAUWENBERGHE, Defendant-Appellant,
Williams & Connolly, Real-party-in-interest-Appellant.
Roger BIARD, Plaintiff-Appellee,
v.
Alan H. BLAIR, et al., Defendants,
and
Wilfried Van Cauwenberghe, Defendant-Appellant,
and
Williams & Connolly, Appellant.
 Nos. 89-50275, 89-55868.
 United States Court of Appeals,
Ninth Circuit.
 Argued May 7, 1990.
Submitted Sept. 25, 1990.
Reargued and Submitted Sept. 25, 1990.
Decided May 20, 1991.
 
 John G. Kester, Williams & Connolly, Washington, D.C., for defendant-appellant Van Cauwenberghe and real-party-in-interest-appellant Williams & Connolly.
 Sara Criscitelli and John D. Arterberry, Dept. of Justice, Washington, D.C., for plaintiff-appellee U.S.
 Percy Anderson, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., for plaintiff-appellee Biard.
 Appeals from the United States District Court for the Central District of California.
 Before WALLACE, Chief Judge, and THOMPSON and O'SCANNLAIN, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 This is a consolidated appeal. In United States v. Van Cauwenberghe, No. 89-50275, Wilfried Van Cauwenberghe appeals the denial of his Fed.R.Crim.P. 41(e) motion for return of property. In Biard v. Blair and Van Cauwenberghe, No. 89-55868, Van Cauwenberghe appeals an order of the district court that directed payment of money on deposit in the registry of the court to the plaintiff, Roger Biard, pursuant to a writ of attachment. The facts and procedural history of these combined cases resemble a labyrinth more closely than a map. However, by wending our way through thorny issues of jurisdiction, standing, res judicata and ultimately the validity of the writ of attachment, we conclude that Van Cauwenberghe's Fed.R.Crim.P. 41(e) motion was properly denied and the order for the payment of the attached funds to Biard was valid. Final judgments have been entered in both cases. We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 FACTS
 A. The Criminal Action
 
 2
 In October 1984, Van Cauwenberghe, a citizen of Belgium, and two American codefendants, Alan H. Blair and Gerald L. Bilton, were indicted on three counts of wire fraud in violation of 18 U.S.C. Sec. 1343, three counts of interstate transportation of a victim of fraud in violation of 18 U.S.C. Sec. 2314, and one count of conspiracy to commit fraud in violation of 18 U.S.C. Sec. 371. Evidence indicated that between 1979 and 1981 the three defendants defrauded Biard, a Belgian investment broker, and a Belgian corporation owned by members of the Vanden Stock family, of $3.6 million in connection with an apartment complex located near Kansas City, Missouri.
 
 
 3
 By the time Van Cauwenberghe was indicted, he was in Belgium. Belgium does not permit extradition of its nationals. See Treaty on Extradition, Oct. 26, 1901, United States-Belgium, Art. V, 32 Stat. 1894, 1898, T.S. No. 409, at 5. The United States government learned, however, that Van Cauwenberghe would be in Switzerland on a brief business trip. On November 20, 1984, the government filed a provisional arrest request with the Swiss authorities pursuant to Article VI of the Treaty on Extradition, May 14, 1900, United States-Switzerland, 31 Stat. 1928, T.S. No. 354 ("Treaty"). On January 14, 1985, Swiss authorities took Van Cauwenberghe into custody as he arrived in Geneva. Pursuant to the United States government's request under Article XII of the Treaty, Swiss authorities also seized Van Cauwenberghe's assets at two Swiss financial institutions, Credit Suisse and Fides Societe Fiduciare. The assets seized included stock certificates in two Panamanian land-holding corporations in which Van Cauwenberghe held 6.293% and 19.659% interests, respectively (the "certificates").
 
 
 4
 The United States government filed a formal extradition request on March 12, 1985. Van Cauwenberghe contested before the Swiss courts both his extradition and the seizure of the certificates. On September 25, 1985, the Swiss Federal Tribunal, Switzerland's highest court, held that Van Cauwenberghe was extraditable under the Treaty for all the offenses charged except conspiracy, and approved Van Cauwenberghe's extradition and the delivery of the certificates to the United States. Van Cauwenberghe was then brought to the United States to stand trial.
 
 
 5
 Before the certificates arrived in the United States, Van Cauwenberghe made a pretrial motion under Fed.R.Crim.P. 41(e) for their return. He supported this motion with a declaration from Fides Societe Fiduciare officials that no money had been invested in the certificate holdings since 1973. The government opposed the motion, took the position that the seizure was lawful and requested that the court hold the certificates pending resolution of the criminal charges against Van Cauwenberghe. The government, while never stating that the certificates were needed for evidentiary purposes, asserted that
 
 
 6
 [i]t would be in keeping with [a] heightened regard for victim rights for the Court to exercise its inherent powers of equity and maintain these assets in the Registry of the Court until there has been a final disposition of the criminal charges against Van Cauwenberghe. By so doing, the Court would deny Van Cauwenberghe an opportunity to dissipate the assets prematurely. The Court thus would preserve its ability to impose restitution as part of its sentencing of Van Cauwenberghe in the event he is convicted of the charges in this case.
 
 
 7
 Government's Opposition to Defendant Van Cauwenberghe's Motion for Return of Property Pursuant to Fed.R.Crim.P. 41(e), Memorandum of Points and Authorities, at 3. The district court preliminarily denied Van Cauwenberghe's Rule 41(e) motion and granted the government's request to place the certificates in the registry of the court "pending litigation in this matter or further order of the Court." On November 12, 1985, the certificates were deposited in the registry of the court pursuant to this order.
 
 
 8
 On the day the certificates were deposited in the registry of the court, the district court held another hearing on Van Cauwenberghe's Rule 41(e) motion. At this hearing it was reported to the court that Biard's civil suit had been filed in the same district court and that a hearing on Biard's motion seeking a writ of attachment against the two stock certificates would be held before a magistrate that afternoon. Upon being advised of this, the district court denied the Rule 41(e) motion pending a decision on Biard's application for the writ of attachment. That afternoon, the magistrate in Biard's civil suit entered a right-to-attach order against the two certificates.
 
 
 9
 On November 19, 1985, the criminal trial of Van Cauwenberghe, Blair and Bilton commenced in the district court on one charge each of interstate transportation of a victim of fraud and wire fraud. Each of the three defendants was found guilty on both counts. The court, on motions by the government, dismissed all remaining charges. The certificates were retained in the court's registry pending sentencing.
 
 
 10
 Van Cauwenberghe was sentenced on one count to serve one year and one day in jail. He was given credit for 373 days already served in pretrial confinement and fined $10,000. On the other count, Van Cauwenberghe was given 5 years probation and fined $1,000. Conditions of Van Cauwenberghe's probation included (1) that he make restitution of $458,373.89 to Roger Vanden Stock and $34,501.26 to Biard, and (2) that he not leave the United States until restitution was made. The restitution amount represented 17.6% of the victims' actual losses. This was equal to the percentage of proceeds of the fraud which the district court determined Van Cauwenberghe received.
 
 
 11
 On January 23, 1986, pursuant to a stipulation between Van Cauwenberghe and the government, the district court entered an order releasing the two certificates into the joint custody of the attorney for Van Cauwenberghe, John Kester of the Williams & Connolly law firm, and the assistant United States attorney. The order provided that the certificates were to be liquidated and the proceeds transmitted to the clerk of the court for deposit back into the court registry to effectuate the court's restitution order. The order made no mention of the writ of attachment.
 
 
 12
 Van Cauwenberghe timely appealed his conviction and sentence to this court. He also filed an emergency motion to modify the conditions of his probation to allow him to travel to his home in Belgium. On December 31, 1986, we entered an order of limited remand on the issue of probation modification. On February 17, 1987, the district court entered an order stating that it found that
 
 
 13
 (1) Van Cauwenberghe ha[d] relinquished sufficient property to pay the restitution in due course; (2) Van Cauwenberghe ha[d] irrevocably transferred full title to the property so that he cannot regain control over it if allowed to return to Belgium; and (3) there [was] no further probationary purpose to be served by requiring Van Cauwenberghe to remain in the United States.
 
 
 14
 United States v. Van Cauwenberghe, 827 F.2d 424, 428 n. 3 (9th Cir.1987), cert. denied, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).
 
 
 15
 On September 3, 1987, we affirmed Van Cauwenberghe's criminal convictions and sentence. Id. at 435. We also affirmed the district court's denial of Van Cauwenberghe's pretrial Rule 41(e) motion for return of the two certificates, concluding that he had not shown entitlement to lawful possession of the seized property because he had irrevocably transferred title to the certificates to the joint custody of his attorney and the government so that the certificates could be sold to satisfy his restitution obligations. Id. at 433-34. We expressed no view as to whether the seizure was legal, whether the certificates would have been returnable to Van Cauwenberghe despite Biard's civil writ of attachment, or whether Van Cauwenberghe lacked standing to challenge the legality of the seizure. Id. at 434. Although we affirmed Van Cauwenberghe's convictions and sentence, we remanded the case to the district court with instructions to consider modifying the condition of Van Cauwenberghe's probation which prevented him from returning to Belgium. Id. at 435.
 
 
 16
 Following remand, Van Cauwenberghe and the government entered an agreement dated January 5, 1988. In return for Van Cauwenberghe recognizing that he had relinquished control and had irrevocably transferred full title to the two certificates to his attorney and the government, and promising not to take action to regain control of or title to the certificates, the government agreed that Van Cauwenberghe could return to Belgium.
 
 
 17
 On May 8, 1989, after the certificates had been sold and the proceeds had been received by the district court, the district court heard Van Cauwenberghe's Rule 41(e) motion for return of that portion of the liquidation proceeds in excess of the amount necessary to pay his fines and restitution. Of the $978,711.78 realized from the sale of the certificates, a total of $503,875.15 was paid to satisfy the fines and restitution. The court denied Van Cauwenberghe's Rule 41(e) motion and ordered that the excess, $474,836.63, remain in the court registry "to be applied upon order of this court to related civil cases, subject to operation of law." Van Cauwenberghe and Williams & Connolly appeal the denial of this motion.
 
 B. The Civil Action
 
 18
 On November 12, 1985, one week before Van Cauwenberghe's criminal trial commenced, Biard filed a civil suit against Van Cauwenberghe and his associates in the United States District Court for the Central District of California. The complaint, as amended, contained a civil Racketeer Influenced and Corrupt Organizations ("RICO") claim, a common-law claim of fraud, a breach of contract claim, a claim of unjust enrichment, a claim of breach of the covenant of good faith and fair dealing, and a claim of denial of the existence of a contract. The jurisdiction of the district court was invoked under the RICO statute, 18 U.S.C. Sec. 1964(b) and (c). On February 5, 1986, approximately two weeks after his sentencing in the criminal case, Van Cauwenberghe was served with a summons and complaint in this civil case as he arrived at the office of his probation officer to keep a court-required appointment.[1]
 
 
 19
 On the same day the civil suit was filed, the right-to-attach order against the two certificates was issued. After the court ordered the certificates sold, Biard obtained an order for issuance of an additional writ of attachment. The order provided that it applied to
 
 
 20
 Cash or cash equivalents realized from the sale of the ... certificates pursuant to the order of United States District Court Judge A. Andrew Hauk, dated January 23, 1986, specifically that amount of cash or cash equivalents in excess of the court ordered restitution in United States v. Van Cauwenberghe ... which will be in the possession of the Clerk of the United States District Court for the Central District of California. Sec. 488.450, Sec. 488.475 and Sec. 488.470 [of the California Code of Civil Procedure] authorize[ ] such an attachment.
 
 
 21
 Ex Parte Order for Issuance of Writ of Attachment, February 6, 1986. When this writ issued, the certificates had been removed from California to Washington, D.C. and were in the joint custody of the government and Van Cauwenberghe's attorney for the purpose of sale.
 
 
 22
 Van Cauwenberghe was granted permission to appear specially in Biard's civil suit to challenge the jurisdiction of the district court. On February 25, 1986, Van Cauwenberghe moved to dismiss the civil suit on four grounds. First, Van Cauwenberghe moved under Fed.R.Civ.P. 12(b)(2) to dismiss on the ground that he was immune from civil process because his presence in the United States resulted from his extradition, and thus, he contended, personal jurisdiction over him was lacking. Second, Van Cauwenberghe asserted pursuant to Fed.R.Civ.P. 12(b)(3) that the complaint should be dismissed on the ground of forum non conveniens. Third, Van Cauwenberghe moved to dismiss the suit pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Fourth, Van Cauwenberghe argued that the case should be dismissed for insufficiency of process pursuant to Fed.R.Civ.P. 12(b)(4).
 
 
 23
 On November 17, 1986, the district court summarily denied Van Cauwenberghe's motions. Van Cauwenberghe appealed the denial of his motion to dismiss on the grounds of lack of personal jurisdiction and forum non conveniens. In an unpublished memorandum disposition filed July 17, 1987, we dismissed this appeal for lack of jurisdiction citing Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Biard v. Blair, No. 86-6735 (9th Cir. July 7, 1987). The Supreme Court granted certiorari and affirmed. Van Cauwenberghe v. Biard, 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988). The Court held that "neither an order denying a motion to dismiss on grounds that an extradited person is immune from civil process, nor an order denying a motion to dismiss on the ground of forum non conveniens, is a collateral order subject to appeal as a final judgment under 28 U.S.C. Sec. 1291." Id. at 530, 108 S.Ct. at 1954.
 
 
 24
 Van Cauwenberghe declined to enter a general appearance to defend the civil case. On April 6, 1987, the district court entered a default summary judgment in favor of Biard for $600,000, additional treble damages under RICO, and attorney fees in the amount of $75,000. Van Cauwenberghe did not appeal this judgment.
 
 
 25
 Biard then moved the district court in the civil suit for an order directing the clerk of the court to pay him and his attorneys the excess proceeds realized from the sale of the stock certificates over and above the amount needed to pay Van Cauwenberghe's criminal fines and restitution. Van Cauwenberghe responded and requested that the district court deny the motion or, in the alternative, defer action until the completion of the appeal in his criminal case. On November 5, 1987, the district court issued an order in the civil suit directing the clerk of the court to pay the excess proceeds from the liquidation of the two stock certificates to Biard once the restitution and fines ordered in the criminal case had been paid. Van Cauwenberghe did not appeal this order. On July 18, 1989, the district court denied a stay of the payment pending appeal and ordered that "notwithstanding any appeals pending in the criminal proceedings," the clerk of the court was to pay Biard the balance of the proceeds of the liquidation of the certificates after the payment of the fines and restitution. The funds were immediately disbursed to Biard. Van Cauwenberghe appeals this order.
 
 DISCUSSION
 A. Standing
 
 26
 Biard contends that neither Van Cauwenberghe nor his attorneys, Williams & Connolly, has standing to appeal the order directing payment of the funds to Biard in the civil case. The government makes the same argument as to the denial of Van Cauwenberghe's Fed.R.Crim.P. 41(e) motion for return of the property in the criminal case.
 
 
 27
 Both Biard and the government base their standing arguments on the ground that a bench warrant is outstanding for Van Cauwenberghe's arrest. Thus, they contend, Van Cauwenberghe is a fugitive and, as such, he is barred from litigating the issues in these appeals. They also argue that Van Cauwenberghe irrevocably transferred any interest in the proceeds from the liquidation of the certificates pursuant to the January 5, 1988 agreement, and thus he no longer has any interest in the certificates. Biard and the government further contend that Williams & Connolly lacks standing because it has no interest in the certificates or their proceeds.
 
 1. Fugitive Bar
 
 28
 The terms of Van Cauwenberghe's probation provide that he "shall not leave the United States until restitution is paid." The United States agreed in the January 5, 1988 agreement that "Van Cauwenberghe may return to Belgium." Unknown to the government, however, Van Cauwenberghe had left the United States bound for his native land some two to three weeks before the date of this agreement.[2] The agreement was not approved by the district court until late May 1988, some five months after Van Cauwenberghe had already left the country. By leaving the United States before he had permission to do so, Van Cauwenberghe violated a condition of his probation. A bench warrant was issued for his arrest and remains outstanding at this time. Van Cauwenberghe, however, has paid all court-ordered restitution and has otherwise satisfied all the terms and conditions of his probation.
 
 
 29
 The doctrine of fugitive disentitlement is one of long standing. See Estelle v. Dorrough, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) (per curiam); National Union of Marine Cooks and Stewards v. Arnold, 348 U.S. 37, 75 S.Ct. 92, 99 L.Ed. 46 (1954); Eisler v. United States, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949); Allen v. Georgia, 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949 (1897); Bonahan v. Nebraska, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887); Smith v. United States, 94 U.S. 97, 24 L.Ed. 32 (1876). In Molinaro, 396 U.S. at 366, 90 S.Ct. at 499, the Supreme Court dismissed the appeal of a criminal conviction when the defendant failed to surrender himself to state authorities. The Court stated that "[n]o persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction." Id.
 
 
 30
 We have applied the disentitlement doctrine to civil cases. See United States v. $129,374 in United States Currency, 769 F.2d 583, 588 (9th Cir.1985), cert. denied, 474 U.S. 1086, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986) (disentitlement doctrine bars intervention in a civil forfeiture proceeding by the successor in interest to a fugitive); Conforte v. Commissioner, 692 F.2d 587, 589 (9th Cir.1982) (disentitlement doctrine even more applicable in civil cases than criminal or quasi-criminal appeals because the appellant's liberty is not at issue). In Conforte, we held that an appellant who was "a fugitive from justice with respect to his conviction" was not entitled to engage this court's resources in a civil action related to his prior criminal conviction. Conforte, 692 F.2d at 589-90.
 
 
 31
 The disentitlement doctrine, however, is not one of jurisdictional dimensions, but rather one based on equitable considerations. See United States v. Sharpe, 470 U.S. 675, 681 n. 2, 105 S.Ct. 1568, 1573 n. 2, 84 L.Ed.2d 605 (1985) (disentitlement doctrine is "based on ... equitable principle[s]"); Molinaro, 396 U.S. at 366, 90 S.Ct. at 499 ("While such [fugitive status] does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims."); United States v. Freelove, 816 F.2d 479, 480 (9th Cir.1987) ("Defendant's escape does not deprive this court of power to hear this appeal, but it does disentitle the defendant from demanding appeal as of right."). Therefore, while we clearly have the discretionary authority to dismiss this appeal, there is "no per se requirement of dismissal in [these] ... case[s]." Hussein v. INS, 817 F.2d 63, 63 (9th Cir.1986) (Norris, J. concurring); see also Katz v. United States, 920 F.2d 610, 611-12 (9th Cir.1990).
 
 
 32
 We do not view this case as one in which we should invoke the disentitlement doctrine and dismiss the appeal. Although Van Cauwenberghe did leave the United States before obtaining permission of the government or the district court and a bench warrant for his arrest is currently outstanding, he does not appear to be flouting the processes of the law. Cf. Conforte, 692 F.2d at 589. Nor can it be said that Van Cauwenberghe "is attempting to bargain with or to obtain a tactical advantage over the court...." Katz, 920 F.2d at 612.
 
 
 33
 Furthermore, on February 17, 1987, as a result of a limited remand by this court and before Van Cauwenberghe left for Belgium, the district court determined that since Van Cauwenberghe had irrevocably transferred his title to the certificates and had agreed to allow them to be liquidated to satisfy restitutionary obligations, there was no further probationary purpose to be served by requiring Van Cauwenberghe to remain in the United States. Van Cauwenberghe, 827 F.2d at 428 n. 3. As a result of this determination, we remanded to the district court "with instructions to consider modifying ... Van Cauwenberghe's probation." Id. at 435.
 
 
 34
 While we do not condone Van Cauwenberghe's action in leaving the United States before obtaining official permission to do so, under the totality of the circumstances of this case we decline to dismiss Van Cauwenberghe's appeal. Compare Hussein, 817 F.2d at 63 (disentitlement doctrine applies when petitioner escaped from federal custody); $129,374 in United States Currency, 769 F.2d at 588-89 (disentitlement doctrine applies where defendant failed to appear for sentencing); Conforte, 692 F.2d at 589-90 (disentitlement doctrine applies where appellant fled after conviction on several criminal counts).
 
 2. Interest in Certificates and Proceeds
 
 35
 Biard and the government also contend that Van Cauwenberghe is precluded from challenging the orders of the district court in this appeal because he no longer has any legal interest in the funds at issue. They argue this issue was previously resolved in Van Cauwenberghe, 827 F.2d at 433-34, and principles of res judicata preclude further review.
 
 
 36
 While it is true that in the January 5, 1988 agreement with the government Van Cauwenberghe stated "he ha[d] relinquished control of and ha[d] transferred irrevocably full title" to the certificates and agreed "not to take action to regain control of or title to" them, it would be unnecessarily harsh to construe this language to mean that Van Cauwenberghe gave up all interest in the liquidation proceeds of assets worth approximately $1 million in order to satisfy fines and restitution obligations of approximately half that much. A more plausible construction of the agreement is that Van Cauwenberghe agreed to relinquish title to the certificates in order to permit their liquidation to pay the fines and restitution requirements stemming from his criminal convictions without ever intending to relinquish any interest in any amounts left over.
 
 
 37
 This interpretation is supported rather than barred by our earlier Van Cauwenberghe decision. There, we stated that "Van Cauwenberghe remains the beneficial owner of the assets and any proceeds derived from their sale...." Van Cauwenberghe, 827 F.2d at 434. Contrary to what Biard and the government now assert, the fact that Van Cauwenberghe could not at the time applicable to his previous appeal show entitlement to lawful possession of the stock certificates does not preclude him from claiming entitlement to the liquidation proceeds remaining after all fines and restitution have been paid. Moreover, the agreement entered into by Van Cauwenberghe, his attorney and the government, because it specifies disposition in accordance with the district court's order, seems to indicate that Van Cauwenberghe relinquished his rights to the certificates only to permit their sale and application of the sales proceeds to pay his criminal fines and restitution obligations.[3]
 
 
 38
 We hold that Van Cauwenberghe has standing to appeal the denial of his Rule 41(e) motion in his criminal case and to appeal the order in the civil case directing payment of the funds in the court's registry to Biard.
 
 3. Standing of Williams & Connolly
 
 39
 Biard and the government contend that Van Cauwenberghe's attorneys, Williams & Connolly, lack standing to contest the orders of the district court which are being appealed. In opposition, Williams & Connolly claims standing under the recent holdings of the Supreme Court in United States Dept. of Labor v. Triplett, 494 U.S. 715, 110 S.Ct. 1428, 1431-32, 108 L.Ed.2d 701 (1990), and Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 109 S.Ct. 2646, 2651 n. 3, 105 L.Ed.2d 528 (1989).
 
 
 40
 To establish standing, a party must show he has suffered a direct and palpable injury and there is a substantial likelihood that the relief requested of the court will redress that injury. See Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 72-81, 98 S.Ct. 2620, 2629-35, 57 L.Ed.2d 595 (1978). Generally, he " 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 474, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982) (quoting Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). There are, of course, exceptions to this general rule. See Triplett, 110 S.Ct. at 1431-32; Caplin & Drysdale, 109 S.Ct. at 2651 n. 3.
 
 
 41
 When a person or entity seeks standing to advance the constitutional rights of others, we ask two questions: first, has the litigant suffered some injury in fact, adequate to satisfy Article III's case-or-controversy requirement; and second, do prudential considerations which we have identified in our prior cases point to permitting the litigant to advance the claim?
 
 
 42
 Caplin & Drysdale, 109 S.Ct. at 2651 n. 3 (citing Singleton v. Wulff, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976)).
 
 
 43
 The first prong of this test requires a showing of some injury in fact. While it is apparent that Van Cauwenberghe owes Williams & Connolly a substantial sum in attorney fees and out-of-pocket expenses for defending him in both the criminal and the civil case,[4] there is no showing of a "substantial likelihood" that Van Cauwenberghe's excess funds which eventually were released from the court's registry to Biard "almost certainly" would have been used to satisfy Van Cauwenberghe's debt to his attorney. Compare Caplin & Drysdale, 109 S.Ct. at 2650 (attorneys' client previously moved district court to permit restrained assets to be used to pay attorney fees and to exempt assets needed to pay attorney fees from forfeiture orders).
 
 
 44
 Additionally, Williams & Connolly never had any direct interest in the certificates or their proceeds. The law firm's only connection with the certificates or their proceeds occurred during the brief time the firm shared joint custody with the government, and that joint custody existed only for the limited purpose of liquidating the certificates and transmitting the sales proceeds back to the registry of the court.
 
 
 45
 Because Williams & Connolly has not demonstrated an entitlement to the disputed funds sufficient to satisfy the injury in fact requirement of Caplin & Drysdale, we do not reach the prudential considerations prong of the Caplin & Drysdale test. We hold that Williams & Connolly lacks standing to challenge the district court orders on appeal.
 
 B. The Civil Judgment and Res Judicata
 
 46
 The principle of res judicata is based on the notion that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). This principle applies to the determination of jurisdiction as well as to the determination of a plethora of other issues. See American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932). Here, the judgment of the district court is res judicata as to the jurisdictional issues Van Cauwenberghe seeks to raise in this appeal.
 
 1. Personal Jurisdiction
 
 47
 Van Cauwenberghe appeared specially in the civil suit to challenge, inter alia, the personal jurisdiction of the district court. The district court denied his motion to dismiss. Van Cauwenberghe appealed to this court. We dismissed the appeal for lack of jurisdiction because the appeal was not taken from an appealable collateral order. Biard v. Blair, No. 86-6735 (9th Cir. July 7, 1987) (citing Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The Supreme Court affirmed, holding that "an order denying a motion to dismiss on grounds that an extradited person is immune from civil process ... is [not] a collateral order subject to appeal as a final judgment under 28 U.S.C. Sec. 1291." Van Cauwenberghe v. Biard, 486 U.S. 517, 530, 108 S.Ct. 1945, 1954, 100 L.Ed.2d 517 (1988). Van Cauwenberghe then declined to enter a general appearance and did not defend the action. The district court granted summary judgment in favor of Biard. Van Cauwenberghe did not appeal. The district court subsequently released the funds in its registry to Biard pursuant to the writ of attachment.
 
 
 48
 In this appeal of the order directing release of the funds, Van Cauwenberghe argues that the district court's default summary judgment was erroneously entered because the district court lacked personal jurisdiction over him. Van Cauwenberghe contends that because he was brought into the United States and within the jurisdiction of the district court under the authority of a treaty of extradition, he was immune from service of civil process while in the jurisdiction as a result of his extradition. In making this argument, Van Cauwenberghe places particular reliance upon United States v. Rauscher, 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886), Blumen v. Haff, 78 F.2d 833, 835 (9th Cir.), cert. denied, 296 U.S. 644, 56 S.Ct. 248, 80 L.Ed. 458 (1935), and In re Baruch, 41 F. 472, 474 (C.C.S.D.N.Y.1890).
 
 
 49
 Whether Van Cauwenberghe's immunity argument is valid or not is irrelevant in the context of this case. The personal jurisdiction issue Van Cauwenberghe presents in this appeal, which is premised on his immunity argument, should have been raised in a direct appeal of the district court's default judgment.
 
 
 50
 A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding. See Baldwin v. Traveling Men's Assn., 283 U.S. 522, 525 [51 S.Ct. 517, 518, 75 L.Ed. 1244] (1931). By submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction: That decision will be res judicata on that issue in any further proceedings.
 
 
 51
 Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982) (citing American Surety Co., 287 U.S. at 166, 53 S.Ct. at 101). Because no appeal of the jurisdictional issue was taken from the final judgment of the district court granting default summary judgment to Biard despite Van Cauwenberghe's earlier challenge based on lack of personal jurisdiction, Van Cauwenberghe cannot now collaterally attack the judgment on this jurisdictional ground. Id.[5]
 
 2. Subject Matter Jurisdiction
 
 52
 Van Cauwenberghe further contends that the order in the civil case by which funds in the court's registry were paid to Biard should not be enforced because the court lacked subject matter jurisdiction over Biard's civil suit.
 
 
 53
 The district court in the civil case originally issued an order to show cause why the case should not be dismissed for lack of subject matter jurisdiction. Order to Show Cause Re: Lack of Diversity of Citizenship, January 7, 1986 (Rymer, J.). This order was rescinded by the district court when a showing was made that federal question jurisdiction was predicated upon an allegation of a violation of the RICO statute. Nevertheless, Van Cauwenberghe contends that the district court lacked subject matter jurisdiction over the controversy because the remedial statutes of the United States should not be construed to apply to suits between foreign nationals whose private disputes over allegedly tortious conduct happen to have touched the United States. For support, Van Cauwenberghe cites, inter alia, Romero v. International Terminal Operating Co., 358 U.S. 354, 384, 79 S.Ct. 468, 486, 3 L.Ed.2d 368 (1959), and Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).
 
 
 54
 Although "[t]he concepts of subject-matter and personal jurisdiction ... serve different purposes, and these different purposes affect the legal character of the two requirements" (Insurance Corp. of Ireland, 456 U.S. at 701, 102 S.Ct. at 2103), the principles of res judicata apply to the determination of subject matter jurisdiction as well as personal jurisdiction. Treinies v. Sunshine Mining Co., 308 U.S. 66, 76-77, 60 S.Ct. 44, 49-50, 84 L.Ed. 85 (1939); Stoll v. Gottlieb, 305 U.S. 165, 172, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938); American Surety Co., 287 U.S. at 166, 53 S.Ct. at 101. Federal courts are courts of limited jurisdiction. A federal court, however, has jurisdiction to determine its own jurisdiction and its decision on this question is binding in most circumstances unless reversed on direct appeal. See United States v. United Mine Workers of America, 330 U.S. 258, 292 n. 57, 67 S.Ct. 677, 695 n. 57, 91 L.Ed. 884 (1947); Stoll, 305 U.S. at 171-72, 59 S.Ct. at 136-37.
 
 
 55
 Van Cauwenberghe's motion to dismiss was based on several grounds, including lack of subject matter jurisdiction. Although no hearing was held on the motion, the issues were fully briefed to the district court.[6] The record demonstrates that the district court considered the issue of subject matter jurisdiction and believed that the complaint sufficiently alleged subject matter jurisdiction to survive a motion to dismiss. The court's ruling on the motion to dismiss, together with all of the records, pleadings and files in the case were before the district court when it made a final determination on the merits and entered summary judgment for Biard. Given this, it is clear that the district "court in rendering a judgment, tacitly, if not expressly, determine[d] its jurisdiction over the ... subject matter." Stoll, 305 U.S. at 171-72, 59 S.Ct. at 136-37.
 
 
 56
 The Supreme Court has stated that "[a] party that has had an opportunity to litigate the question of subject-matter jurisdiction may not ... reopen that question in a collateral attack upon an adverse judgment." Insurance Corp. of Ireland, 456 U.S. at 702 n. 9, 102 S.Ct. at 2104 n. 9. Accord Sherrer v. Sherrer, 334 U.S. 343, 350, 68 S.Ct. 1087, 1090, 92 L.Ed. 1429 (1948) ("Insofar as cases originating in the federal courts are concerned, the rule has evolved that the doctrine of res judicata applies to adjudications relating either to jurisdiction of the person or of the subject matter where such adjudications have been made in proceedings in which those questions were in issue and in which the parties were given full opportunity to litigate.") (footnote omitted); Stoll, 305 U.S. at 172, 59 S.Ct. at 137 ("We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation." (footnote omitted)).
 
 
 57
 We readily acknowledge that the general rule of finality of jurisdictional determinations with respect to collateral proceedings is not without exceptions. On occasion, application of the doctrine of res judicata is outweighed by other important policy considerations. See United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 514-15, 60 S.Ct. 653, 657-58, 84 L.Ed. 894 (1940) (sovereign immunity); Kalb v. Feuerstein, 308 U.S. 433, 438-44, 60 S.Ct. 343, 345-48, 84 L.Ed. 370 (1940) (federal preemption). See also Consolidated Rail Corp. v. Illinois, 423 F.Supp. 941, 947-50 (Regional Rail Reorg.Ct.1976), cert. denied, 429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977).
 
 
 58
 Wright, Miller and Cooper suggest that factors such as the jurisdictional nature of the court involved, the importance of the specific jurisdictional limit that has been transgressed, the clarity of the error, the quality of the procedures available in the first court, the impact of the case on the general values of res judicata, and whether the issue has actually been litigated, should be balanced against application of the principle of res judicata. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4428, at 274-78 (1981). Despite the potential for exceptions, Wright, Miller and Cooper assert that "[t]oday, it is safe to conclude that most federal court judgments are res judicata notwithstanding a lack of subject matter jurisdiction." Id. at 272.
 
 
 59
 Here, there was no clear lack of subject matter jurisdiction, the issue was fully briefed and presented to the district court in a motion to dismiss, and the district court decided the jurisdictional question. Given these circumstances, as the Third Circuit has observed, "even the issue of subject matter jurisdiction must at some point be laid to rest." Hodge v. Hodge, 621 F.2d 590, 592 (3d Cir.1980) (per curiam).
 
 
 60
 We hold that Van Cauwenberghe is precluded by the doctrine of res judicata from collaterally attacking in this appeal personal jurisdiction and subject matter jurisdiction of the district court in Biard's civil suit.[7]
 
 C. The Disbursement of Funds
 
 61
 We next consider the merits of Van Cauwenberghe's challenge to the district court's denial of his Rule 41(e) motion in the criminal case and the district court's order directing payment of the funds in the court's registry to Biard in the civil case.
 
 1. The Rule 41(e) Motion
 Fed.R.Crim.P. 41(e) provides that:
 
 62
 [a] person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings....
 
 
 63
 A Rule 41(e) motion may be granted after trial "regardless and independently of the validity or invalidity of the underlying search and seizure." United States v. Wilson, 540 F.2d 1100, 1104 (D.C.Cir.1976).[8] Ordinarily, property seized for purposes of a trial that is neither contraband nor subject to a forfeiture statute is to be returned to the defendant at the end of the trial. Id. A defendant's Rule 41(e) motion for return of property, however, may be denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues. Van Cauwenberghe, 827 F.2d at 433 (citing Sovereign News Co. v. United States, 690 F.2d 569, 577 (6th Cir.1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); United States v. Hubbard, 650 F.2d 293, 303 (D.C.Cir.1980); Fed.R.Crim.P. advisory committee note; 3 C. Wright, Federal Practice and Procedure Sec. 673, at 761-65 (2d ed. 1982)); United States v. Martinson, 809 F.2d 1364, 1369-70 (9th Cir.1987).
 
 
 64
 Here it is plain that the evidentiary utility of the certificates, and more obviously that of the liquidation proceeds, was reduced to zero, if, indeed, it ever existed at all. Neither the certificates nor their proceeds were introduced into evidence, the trial is over, a conviction has been obtained and upheld, and a sentence has been meted out, sustained and served. Also, it is clear that the certificates and their proceeds are not contraband nor subject to forfeiture.
 
 
 65
 Therefore, if the only ones claiming the remaining liquidation proceeds were Van Cauwenberghe and the government, the district court quite arguably should have granted Van Cauwenberghe's Rule 41(e) motion which is the subject of this appeal.[9] As we stated in Martinson, "when the property in question is no longer needed for evidentiary purposes, ... the burden of proof changes. The person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property." Martinson, 809 F.2d at 1369 (footnotes omitted).
 
 
 66
 Here, however, we have the intervening event of the levy of Biard's civil writ of attachment. The battle over the remaining proceeds is not simply between the government and Van Cauwenberghe. Biard has entered the fray. Given this circumstance, Van Cauwenberghe's entitlement to possession of the property in question is dependent upon the validity of the writ of attachment.
 
 
 67
 We have intimated that a third party who establishes a claim to seized property might defeat a defendant's Rule 41(e) motion for the property's return. See United States v. Palmer, 565 F.2d 1063, 1065 (9th Cir.1977) (Rule 41(e) motion should have been granted given "absence of any cognizable claim of ownership or right to possession adverse to that of [the defendant]"). This comment, however, was made in reference to direct ownership of the exact property by the third-party claimant or instances where evidentiary indications produced a direct link between the crime and the property in the registry of the court.[10] We have never expressly addressed the question whether a third-party victim might attach seized property in the registry of the court to satisfy a prospective civil judgment and defeat a Rule 41(e) motion where the property was not directly connected with the victim's loss. We address this question now.
 
 
 68
 Two writs of attachment issued in this case. The initial writ dates back to November 12, 1985, the date the certificates were deposited in the registry of the district court. This first writ attached the certificates themselves. On January 23, 1986, the district court released the certificates to the joint custody of Van Cauwenberghe's attorney and the United States government to liquidate the certificates so that Van Cauwenberghe's fines and restitution obligations arising out of his criminal sentence could be paid. In releasing the certificates from the court's registry solely for the purpose of sale and directing the sales proceeds be deposited back into the registry of the court, the certificates and their proceeds remained at all times in the control of the court. The writ of attachment's hold on the certificates was thus effectively transferred to the proceeds of the sale, and the writ attached to the proceeds in the same manner and to the same extent that it had attached to the certificates themselves. Cf. Markey v. Langley, 92 U.S. 142, 155, 23 L.Ed. 701 (1875). See also Pacific Loan Management Corp. v. Superior Court, 196 Cal.App.3d 1485, 1493, 242 Cal.Rptr. 547, 552 (1987); Dockrey v. Gray, 172 Cal.App.2d 388, 391, 341 P.2d 746, 749 (1959); Sohn v. California Pacific Title Ins. Co., 124 Cal.App.2d 757, 766-67, 269 P.2d 223, 223 (1954).
 
 
 69
 On February 6, 1986, Biard applied for and was granted a second writ of attachment. This additional writ purported to attach any proceeds eventually resulting from the sale of the certificates. At the time this writ issued, the certificates were in Washington, D.C. and had not yet been sold. Van Cauwenberghe contends that this second writ was improperly issued.[11] We need not reach this issue however, because, as we have stated, the original writ covered both the certificates and the proceeds generated from their sale.
 
 
 70
 This brings us to a consideration of the question whether the circumstance that the certificates and their proceeds were held in the registry of the court precluded their attachment.
 
 
 71
 It has long been asserted that property and funds in the registries of federal courts are not, as a general rule, subject to writs of attachment or garnishment. See The Lottawanna, 87 U.S. (20 Wall.) 201, 222, 224, 22 L.Ed. 259 (1874); Bucher v. Vance, 36 F.2d 774, 775 (7th Cir.1929); Jones v. Merchants' Nat'l Bank, 76 F. 683, 687 (1st Cir.), appeal denied, 102 F. 1003 (1st Cir.1896); American Exch. Life Ins. Co. v. Putnicki, 510 F.Supp. 19, 20-21 (W.D.Tex.1980); Corporation Co. of Miami v. Mikelis, 467 F.Supp. 826, 827 (S.D.Fla.1979); Reed Marketing Corp. v. Diversified Marketing, Inc., 419 F.Supp. 125, 126 (N.D.Ill.1976); In re Stark, 36 F.2d 280, 280 (W.D.N.Y.1929). See generally 7 C.J.S. Attachment Sec. 60 (1980); 6 Am.Jur.2d Attachment Sec. 196 (1964); 16 Cal.Jur.3d (rev.), Creditors Rights and Remedies Sec. 111 (1983). The justification put forth for this doctrine of custodia legis is "the desirability of avoiding a clash between judicial jurisdictions which would result from any attempt to use the process of one to seize assets in the control of another judicial authority." In re Quakertown Shopping Center, Inc., 366 F.2d 95, 97 (3d Cir.1966). More specifically, the common law doctrine of custodia legis prohibits any attachment of property in a court's registry that would prevent the court from allocating the property in accord with the purpose for which it was deposited. The doctrine applies where a court issues an order that interferes with the jurisdiction of another court, generally that of another sovereign, and impedes the latter's ability to dispose of property in its registry. See Landau v. Vallen, 895 F.2d 888, 894-96 (2d Cir.1990). Thus, under the doctrine of custodia legis, funds deposited in the registries of federal courts may not be attached "except by the order of the judge or judges of said courts." The Lottawanna, 87 U.S. (20 Wall.) at 225.[12]
 
 
 72
 Here, the writ of attachment was issued out of the district where the funds were located. The writ was issued in the civil case to attach property placed in the registry of the district court in the criminal case. Both cases were pending in the same district court. Thus, the court that ordered the attachment did not run the risk of "produc[ing] a collision in the jurisdiction of the courts that would extremely embarrass the administration of justice." Thomas v. Wooldridge, 23 F.Cas. 986, 987 (C.C.S.D.Mo.1875) (No. 13,918). See also Landau, 895 F.2d at 897 n. 6.
 
 
 73
 Further, attachment of property in the registry of the court under the circumstances of this case does not implicate sovereign immunity. Although funds held in the registry of a federal district court are held by the United States Treasury under 28 U.S.C. Sec. 2041, the attachment of funds in which the government has absolutely no interest cannot be barred by the doctrine of sovereign immunity. Here the government requested that the court accept the certificates and the proceeds into its registry. The government has never attempted to claim an interest in the property. The court itself has no interest in the property. Therefore,
 
 
 74
 [n]o funds in which the United States has an interest will be expended from the Treasury; nor will the relief interfere with the public administration. See Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012-13, 91 L.Ed. 1209 (1947). The United States' involvement is only ancillary, and the sovereign immunity doctrine does not apply.
 
 
 75
 Landau, 895 F.2d at 893 (citing Excess and Casualty Reinsurance Ass'n v. Insurance Commissioner, 656 F.2d 491, 497-98 (9th Cir.1981); Bank of Hawaii v. Benchwick, 249 F.Supp. 74, 79 (D.Haw.1966)).
 
 
 76
 Nor is the allowance of such an attachment inconsistent with California's attachment law.[13] California courts have held that the doctrine of " '[c]ustodia legis' is a legal principle evolved to prevent outside interference with a court's jurisdiction to deal with property in its custody, it is not a principle designed to govern the court's dispositional power over such property." People v. Superior Court, 28 Cal.App.3d 600, 612, 104 Cal.Rptr. 876, 885 (1972). See also Phoenix v. Kovacevich, 246 Cal.App.2d 774, 778, 55 Cal.Rptr. 135, 135 (1966) ("The California courts have consistently held that property in custodia legis may be levied upon if permission is first obtained from the court exercising such custody."); accord Estate of Silverman, 249 Cal.App.2d 180, 185, 57 Cal.Rptr. 379, 382 (1967); Lea v. Strebe, 201 Cal.App.2d 227, 230, 20 Cal.Rptr. 20, 22 (1962). Thus, attachment of property in custodia legis is permissible under California law with the consent of the holding court.[14]
 
 
 77
 We conclude that the writ of attachment was validly issued.[15] As a result, Van Cauwenberghe's claim to lawful possession of the certificates and their proceeds in the registry of the court was barred by the writ of attachment. It follows, therefore, that the district court properly denied Van Cauwenberghe's Rule 41(e) motion in the criminal case.
 
 
 78
 2. Order Directing Disbursement of Funds in the Civil Case
 
 
 79
 The writ of attachment having been validly issued, the district court in the civil case did not err in ordering payment to Biard of the excess funds in the court's registry.[16]
 
 CONCLUSION
 
 80
 We affirm the denial of Van Cauwenberghe's Rule 41(e) motion in appeal No. 89-50275 and the district court's order directing the payment of the excess funds in the registry of the court to Biard in appeal No. 89-55868.
 
 
 81
 AFFIRMED.
 
 
 
 [1]
 Because Van Cauwenberghe received credit for his 373 days of pretrial confinement, he was immediately released to begin his probationary period
 
 
 [2]
 The government later learned through Interpol that Van Cauwenberghe had arrived in Belgium via Toronto on December 11, 1987
 
 
 [3]
 For example, Paragraph 2 of the agreement specifies that
 Van Cauwenberghe retains and does not waive any and all appeals and petitions for certiorari arising from his conviction in the aforesaid action or the pending civil action, including but not limited to challenges to the legality of the seizure and retention of the assets and to any aspects of his conviction and sentence.
 Further, paragraph 6 of the agreement specifies that "any rights or remedies Van Cauwenberghe may have within the United States legal system remain unaffected."
 The context in which the agreement was made also supports a reading that Van Cauwenberghe did not relinquish all interest in the assets. Paragraph 4 of the agreement specifies that the liquidation proceeds are to be "transmitted to the Clerk of the United States District Court for the Central District of California for disposition according to the aforesaid January 23, 1986, order." In that January 23, 1986 order, the district court ordered the parties to proceed with the liquidation of the stock certificates. Paragraph 4 of the order specifies that the liquidation proceeds be transmitted to the clerk for deposit into the court registry, and that "[a]ll sums so transmitted up to the amount of restitution ordered shall be retained in the registry by the Clerk until final disposition of appellate review of this case." Thus the order contemplates some action to be taken with regard to the amount beyond that required for satisfaction of the fines and restitution obligations.
 
 
 [4]
 Van Cauwenberghe's brief indicates that Williams & Connolly has expended over $100,000 for travel, witness interviews, printing and other out-of-pocket expenses
 
 
 [5]
 Van Cauwenberghe appealed to this court the denial of his motion to dismiss on the ground of forum non conveniens as well as the denial of his motion to dismiss for lack of personal jurisdiction. As with the order denying his motion to dismiss for lack of personal jurisdiction, we held that we had no jurisdiction to hear his appeal from the denial of his motion to dismiss on the basis of forum non conveniens, because the denial of that motion was not an appealable collateral order. Biard v. Blair, No. 86-6735 (9th Cir. July 7, 1987). The Supreme court affirmed. Van Cauwenberghe, 486 U.S. at 527-30, 108 S.Ct. at 1952-54
 It is not clear whether Van Cauwenberghe attempts to present in this appeal the issue of the denial by the district court of his motion to dismiss based on forum non conveniens. In his opening brief Van Cauwenberghe states that "[t]he civil action also should have been dismissed for forum non conveniens, which the District Court did not address...." In his reply brief, Van Cauwenberghe states that "[a]ppellants did not argue the forum non conveniens point in this appeal because we believe it is not of jurisdictional dimensions, even though the District Court's denial of the forum non conveniens motion without making any supporting findings was clearly reversible error." In any event, neither the forum non conveniens issue nor the personal jurisdiction issue was raised on direct appeal of the district court's judgment. Accordingly, Van Cauwenberghe is precluded from raising the forum non conveniens issue in this collateral proceeding. Cf. Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940).
 
 
 [6]
 Van Cauwenberghe's motion to dismiss was supported by a 26-page memorandum of points and authorities, three pages of which dealt with the alleged lack of subject matter jurisdiction. Biard filed an opposition to Van Cauwenberghe's motion to dismiss which was supported by a 32-page memorandum of points and authorities, three pages of which focused on the issue of subject matter jurisdiction. Van Cauwenberghe then lodged a 19-page reply in support of his motion to dismiss, which devoted two pages to subject matter jurisdiction
 
 
 [7]
 We express no opinion on whether principles of res judicata would preclude Van Cauwenberghe from challenging subject matter jurisdiction in Biard's civil suit if he had not litigated this issue by his motion to dismiss. Cf. Lambert v. Conrad, 536 F.2d 1183, 1185 (7th Cir.1976) (citing inter alia United States v. Eastport Steamship Corp., 255 F.2d 795, 803 (2d Cir.1958), ("[t]his same result [may be] reached even though the parties did not actually litigate the issue in the prior action because res judicata applies not only to matters actually litigated but also to matters ... asserted in the earlier proceeding."). Accord Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940) (It is "well-settled ... that res judicata may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, 'but also as respects any other available matter which might have been presented to that end.' ") (quoting Grubb v. Public Util. Comm'n, 281 U.S. 470, 479, 50 S.Ct. 374, 378, 74 L.Ed. 972 (1930); Hodge, 621 F.2d at 592 ("It was settled long ago ... that when a federal court proceeds to final judgment on the merits, the issue of its subject matter jurisdiction is res judicata even though it was not litigated...."). See generally 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure Sec. 4428 (1981)
 
 
 [8]
 Because Van Cauwenberghe's entitlement to the proceeds of the liquidation of the certificates is not dependent on the illegality of the initial seizure, we need not now address the issue whether the government's original seizure of the certificates was legal. Whether or not the certificates were lawfully seized, Van Cauwenberghe was entitled to get his property back provided he was entitled to lawful possession of the certificates or the proceeds thereof, the certificates and the proceeds were not the fruit of illegal criminal activity nor contraband and the evidentiary utility of the certificates was exhausted. See United States v. Martinson, 809 F.2d 1364, 1369 (9th Cir.1987) ("[w]hen the property ... is no longer needed for evidentiary purposes, ... the legality of the search and seizure is no longer an issue; even if the seizure was lawful the government must justify its continued possession of the property by demonstrating that it is contraband or subject to forfeiture."); United States v. Brant, 684 F.Supp. 421, 424 n. 5 (M.D.N.C.) ("the government [has an] obligation to return property, even though lawfully seized, once its legitimate reasons for retention have terminated."), aff'd, 865 F.2d 1260 (4th Cir.1988)
 
 
 [9]
 But cf. Van Cauwenberghe, 827 F.2d at 433 (holding that Van Cauwenberghe could not prevail on his previously filed Rule 41(e) motion because he had irrevocably transferred full title to the certificates to his attorney and the United States to satisfy the restitution obligations imposed during criminal sentencing; thus, at that time he could not demonstrate that he was entitled to lawful possession of the seized property)
 
 
 [10]
 In Palmer, a convicted bank robber moved for the return of $763 which had been seized from his person at the time of his arrest. Palmer, 565 F.2d at 1064. The government opposed the motion and asserted "that as a short-cut to an obviously just solution it should be permitted to turn the money over to the victim bank and let [the] defendant try to get it back from the bank." Id. There was no proof introduced to the effect that the $763 was the property of the victim bank and the bank made no effort to claim the money. Id. We stated that "[w]hile we wholeheartedly approve [of] the proposition that victims of crime should have compensation from the criminal, we feel that even at the cost of judicial time it is preferable to accomplish this end through traditional judicial procedures rather than to leave it to the police, state or federal, to find nonjudicial ways and means by which to secure compensation from the criminal." Id. at 1064-65
 
 
 [11]
 Van Cauwenberghe's contention is based primarily on the fact that the writ issued when the certificates were no longer physically within the Central District of California
 
 
 [12]
 There are exceptions to this rule. For example, we have held that tax liens may attach to property held in custodia legis. See United States v. Freedman, 444 F.2d 1387, 1388 (9th Cir.), cert. denied, 404 U.S. 992, 92 S.Ct. 538, 30 L.Ed.2d 544 (1971). See also United States v. Francis, 646 F.2d 251, 263 (6th Cir.), cert. denied, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981); Welsh v. United States, 220 F.2d 200, 201-02 (D.C.Cir.1955)
 
 
 [13]
 Fed.R.Civ.P. 64 provides that
 At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable; (2) the action in which any of the foregoing remedies is used shall be commenced and prosecuted or, if removed from a state court, shall be prosecuted after removal, pursuant to these rules. The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.
 Under this Rule, state law controls the availability of provisional remedies to secure satisfaction of judgments in a federal district court. See Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 193, 61 S.Ct. 513, 517, 85 L.Ed. 725 (1941); Anderson Foreign Motors, Inc. v. New England Toyota Distributor, Inc., 475 F.Supp. 973, 977 (D.Mass.1979). Rule 64 codifies "long-settled federal law providing that in all cases in federal court, whether or not removed from state court, state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered." Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70, 415 U.S. 423, 436-37 n. 10, 94 S.Ct. 1113, 1122-23 n. 10, 39 L.Ed.2d 435 (1974) (discussing 28 U.S.C. Sec. 1450).
 
 
 [14]
 Cal.Civ.Proc.Code Sec. 488.475 is not to the contrary. This section provides that, with certain exceptions, "attachment of property that is the subject of an action or special proceeding pending at the time of the attachment is not effective." Cal.Civ.Proc.Code Sec. 488.475(b) (West Supp.1991). In the present case, however, the property was merely being held by the district court and was not "the subject of" the action. Cf. United States Overseas Airlines v. County of Alameda, 235 Cal.App.2d 348, 350-53, 45 Cal.Rptr. 337, 338-40 (1965) (interpreting the term "property in litigation" in Cal.Rev. & Tax.Code Sec. 983)
 
 
 [15]
 We do not decide whether a civil litigant may obtain a writ of attachment on property deposited with the federal court on behalf of a criminal defendant as bail, which may pose different or additional considerations
 
 
 [16]
 Because we decide that the district court properly denied Van Cauwenberghe's Rule 41(e) motion, and did not err in ordering the excess funds in the court's registry paid to Biard, we do not consider the question whether disbursement of the funds from the court's registry rendered these appeals by Van Cauwenberghe moot