166 F.3d 1020
 33 Bankr.Ct.Dec. 1235, Bankr. L. Rep. P 77,899,
99 Cal. Daily Op. Serv. 953,
99 Daily Journal D.A.R. 1217
 In re Robert GRUNTZ, Debtor.
Robert Gruntz, Plaintiff-Appellant,
v.
County of Los Angeles; Los Angeles District Attorney,
Defendants-Appellees.
 No. 97-55379.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 6, 1998
Decided Feb. 4, 1999.
 
 Larry J. Roberts, Costa Mesa, CA, for plaintiff-appellant.
 Calvin House, Gutierrez & Preciado, Pasadena, CA, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Robert J. Timlin, District Judge, Presiding. D.C. No. CV-95-00414-RT.
 Before: FLETCHER, BOOCHEVER and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Robert Gruntz, a debtor in bankruptcy, was convicted in California state court on criminal charges of failing to pay child support. He argued in state court that his prosecution was invalid because it violated the automatic stay in his bankruptcy proceeding. See 11 U.S.C. § 362. The state court rejected this argument, and Gruntz was convicted. His conviction was affirmed by the California Court of Appeal.
 
 
 2
 Gruntz then filed an adversary complaint in the bankruptcy court and sought injunctive and declaratory relief. He sought, among other things, an order from the bankruptcy court that his California state court conviction was invalid because it violated the automatic stay of 11 U.S.C. § 362.
 
 
 3
 The bankruptcy court granted the appellee Los Angeles County's motion to dismiss the complaint. The bankruptcy court held that collateral estoppel precluded Gruntz from relitigating in the bankruptcy court the stay issue which he had litigated in the California trial and appellate courts. Gruntz then appealed to the district court.
 
 
 4
 The district court affirmed the bankruptcy court's dismissal of Gruntz's complaint. It did so on the basis of the Rooker-Feldman doctrine, which generally prohibits federal courts from reviewing state court decisions. Gruntz now appeals to this court.
 
 
 5
 Because we conclude that neither collateral estoppel nor the Rooker-Feldman doctrine apply, we reverse, and remand this case to the district court for remand to the bankruptcy court with directions to determine whether the state court proceedings violated the automatic stay of 11 U.S.C. § 362.
 
 STANDARDS OF REVIEW
 
 6
 "Because this court is in as good a position as the district court to review the findings of the bankruptcy court, it independently reviews the bankruptcy court's decision." Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). When a dismissal rests on principles of preclusion, we review the decision de novo. Clark v. Bear Stearns & Co., 966 F.2d 1318, 1320 (9th Cir.1992). Review is also de novo when dismissal is based on a lack of subject matter jurisdiction. Erickson v. Desert Palace, Inc., 942 F.2d 694, 694-95 (9th Cir.1991).
 
 FACTS[1]
 
 7
 In October 1988, while Gruntz was under a state court order to pay child support of $300 per month to his ex-wife, he filed for Chapter 13 bankruptcy protection. According to his Chapter 13 reorganization plan, Gruntz was to pay his $300 per month child support payments to his Chapter 13 trustee. In addition to these payments, the reorganization plan obligated Gruntz to pay $291.50 per month to pay off an accumulated arrearage of $5,100 in past due child support.
 
 
 8
 Gruntz alleges he began making the planned payments to his Chapter 13 trustee. The Chapter 13 proceeding, however, was converted to a Chapter 11. The administrative expenses of this conversion ate up the available money held by the Chapter 13 trustee, with the result that the trustee did not pay Gruntz's ex-wife the required child support payments. The ex-wife became upset with this, and sought assistance from the Los Angeles County District Attorney's office. By the time the D.A.'s office contacted Gruntz, the County claimed his child support arrearages totaled $17,000. The D.A.'s office told Gruntz that it would bring criminal charges against him if he did not agree to an arrangement for payment of his past due child support obligation and pay his current support payments through the D.A.'s office.
 
 
 9
 Gruntz informed the D.A.'s office of his pending bankruptcy proceeding and told the D.A. that he was required to make his child support payments to the bankruptcy court trustee. Gruntz further told the D.A. that any state criminal prosecution would be subject to the automatic stay provision of 11 U.S.C. § 362 because it would be an attempt to coerce him into paying his past due and current child support payments.
 
 
 10
 Neither the D.A. nor Gruntz's ex-wife filed a claim in Gruntz's bankruptcy proceeding. Nor did the D.A. seek relief from the automatic stay in the bankruptcy court. Instead, in October 1990, the D.A. filed a misdemeanor criminal complaint against Gruntz charging him with violating California Penal Code § 270 (failure to support dependent children). Two days later, the D.A.'s office notified the State Bar of California that criminal charges had been filed against Gruntz. With these charges pending, Gruntz, a law school graduate, could not be admitted to the State Bar.
 
 
 11
 The D.A.'s office offered to agree to a suspended sentence if Gruntz would plead guilty and pay the back child support. Gruntz maintained that he could not agree to the D.A.'s terms because he was under an order to make his support payments to the bankruptcy court trustee. Gruntz also refused to plead guilty for fear his conviction would prevent his admission to the California State Bar.
 
 
 12
 Gruntz proceeded to trial before a jury. At trial, according to Gruntz, the court precluded him from presenting a defense based on his payment of child support to the bankruptcy trustee.[2] The jury convicted him of the willful failure to pay child support in violation of California Penal Code § 270.
 
 
 13
 After his conviction, but before he was sentenced, Gruntz filed an adversary complaint against the County in the bankruptcy court, and sought a temporary restraining order to prevent the County from proceeding with the sentencing hearing. The bankruptcy court declined to issue a restraining order, and Gruntz was sentenced to 360 days in jail. His conviction was affirmed by the California Court of Appeal. People v. Gruntz, 29 Cal.App.4th 412, 35 Cal.Rptr.2d 55 (1994).
 
 
 14
 While Gruntz's criminal appeal was pending, he suffered a second conviction for violating California Penal Code § 270. He was also convicted of violating California Penal Code § 166.4 (failure to obey a state court order). Gruntz appealed these convictions as well.
 
 
 15
 Gruntz eventually filed a second adversary complaint against the County in the bankruptcy court. He sought, among other things, a declaration that the state criminal prosecutions were void because they were conducted in violation of the automatic stay. Gruntz also sought an injunction ordering the California Court of Appeal to decertify its opinion in People v. Gruntz, and requiring the D.A.'s office to take whatever actions were necessary to clear Gruntz's criminal record and to notify all federal and state agencies and the State Bar of California.
 
 
 16
 The County moved in the bankruptcy court to dismiss Gruntz's complaint. The bankruptcy court granted the motion, reasoning that because the California courts had considered and rejected Gruntz's assertion that the criminal proceedings violated the automatic stay in bankruptcy, collateral estoppel precluded Gruntz from relitigating that issue. The bankruptcy court dismissed the complaint with prejudice. Gruntz appealed to the district court, which affirmed the dismissal on the basis of the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust, 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486-87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). This doctrine generally precludes federal courts (except the United States Supreme Court) from reviewing state court decisions.
 
 
 17
 Gruntz now appeals to this court. We have jurisdiction under 28 U.S.C. § 158(d). We reverse and remand to the district court with instructions to remand to the bankruptcy court to determine whether the state court criminal proceedings violated the automatic stay in bankruptcy.
 
 DISCUSSION
 
 18
 * The Criminal Convictions
 
 
 19
 This appeal turns on whether the California state courts had jurisdiction to determine if the state criminal proceedings against Gruntz were excluded from the automatic stay in bankruptcy.
 
 
 20
 Among other things, 11 U.S.C. § 362 provides for an automatic stay of "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate", 11 U.S.C. § 362(a)(3), and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy court proceeding]", 11 U.S.C. § 362(a)(6). Certain acts, however, are excluded from the automatic stay, e.g. "the commencement or continuation of a criminal action or proceeding against the debtor", 11 U.S.C. § 362(b)(1), "the collection of alimony, maintenance, or support from property that is not property of the estate", 11 U.S.C. § 362(b)(2),[3] and "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power", 11 U.S.C. § 362(b)(4).
 
 
 21
 The County relies, in part, on 11 U.S.C. § 362(b)(1) to argue that its criminal prosecution of Gruntz is excluded from the automatic stay. Gruntz contends that only the federal courts can determine whether the state proceedings against him for his alleged failure to pay child support were in fact criminal proceedings excluded from the automatic stay under section 362(b)(1). The issue is whether the state had the power to determine the reach of the automatic stay in bankruptcy.
 
 
 22
 Congress, pursuant to its plenary constitutional power over bankruptcy, has granted original and exclusive jurisdiction to the district courts for all cases in bankruptcy under title 11. See U.S. Const. Art. I, § 8, cl. 4; 28 U.S.C. § 1334(a).[4] In the Central District of California, as in other districts in the United States, this original and exclusive jurisdiction is exercised by the bankruptcy courts on reference from the district courts. See 28 U.S.C. § 157(a) and C.D. Cal. General Order 266 (Oct. 9, 1984) (as amended by Gen. Order 266-A (Feb. 13, 1995)).
 
 
 23
 "The automatic stay is one of the fundamental debtor protections provided in the bankruptcy laws." H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6296.[5] State court jurisdiction to determine the effect of and exceptions to such a fundamental bankruptcy tool "would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards...." See Gonzales v. Parks, 830 F.2d 1033, 1035 (9th Cir.1987) (holding that state courts have no jurisdiction to determine the propriety of a debtor's bankruptcy petition); see also In re Raboin, 135 B.R. 682, 684 (Bankr.D.Kan.1991) ("[T]his court has exclusive jurisdiction to determine the extent and effect of the stay, and the state court's ruling to the contrary does not bar the debtor's present motion."); In re Sermersheim, 97 B.R. 885, 888 (Bankr.N.D.Ohio 1989) ("It is the bankruptcy court alone that has the exclusive jurisdiction to determine questions involving the automatic stay."). Accordingly, the California state courts had no jurisdiction to determine whether the criminal prosecutions of Gruntz were excluded from the automatic stay. The state's recourse was to seek relief from the automatic stay in the bankruptcy court. It did not do so.
 
 
 24
 The County contends that a state court's determination of its own subject matter jurisdiction, even if wrong, must be given preclusive effect. The County correctly states the general rule. "[T]he general rule [is] that a judgment is entitled to full faith and credit-even as to questions of jurisdiction-when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); see also United States v. Van Cauwenberghe, 934 F.2d 1048, 1058-60 (9th Cir.1991); Restatement (Second) of Judgments § 12 (1982).
 
 
 25
 The general rule, however, does not apply in this case. Neither party has presented anything to suggest that either the state trial or appellate courts in Gruntz's prosecutions considered whether they had jurisdiction to determine issues regarding the automatic stay. The California Court of Appeal apparently assumed it had jurisdiction and proceeded to decide whether the stay applied to the pending action. Gruntz, 29 Cal.App.4th at 417, 35 Cal.Rptr.2d 55. Cf. Van Cauwenberghe, 934 F.2d at 1059 (when the district court made its decision, it "tacitly" made a determination regarding its jurisdiction because the issue had been fully briefed). Because there is nothing in the record before us indicating that the question of jurisdiction was actually presented to the California state courts, there can be no implicit jurisdictional determination entitled to preclusive effect under Durfee or Van Cauwenberghe.
 
 
 26
 Even if we were to find implicit determination of the jurisdiction issue, however, the state courts' decision would still have no preclusive effect. Durfee and the cases it cites all involve jurisdictional issues based on questions of fact. In Durfee, the Supreme Court held that the Nebraska courts had jurisdiction to determine their own jurisdiction over a parcel of land despite the appellant's contention that the land was situated in Missouri. Durfee, 375 U.S. at 116, 84 S.Ct. 242. Once the location of the parcel had been fully and fairly litigated in Nebraska state court, that court's determination regarding the parcel's location within Nebraska was not subject to collateral attack. Id. In contrast, the present case presents the purely legal question whether state courts are competent to determine issues regarding the reach of an automatic stay in bankruptcy.
 
 
 27
 A purely legal jurisdictional question was presented in Van Cauwenberghe. There, the question was whether "remedial statutes of the United States should [ ] be construed to apply to suits between foreign nationals whose private disputes over allegedly tortious conduct happen to have touched the United States." Van Cauwenberghe, 934 F.2d at 1058. The question was answered by a federal district court with unquestioned jurisdiction to consider the reach of the federal statute. Id. at 1059. In contrast, the facts and proceedings in the present case involve state courts deciding an issue of federal bankruptcy law over which federal courts have exclusive jurisdiction. The general rule of Durfee is inapplicable in these circumstances.
 
 
 28
 Moreover, even if the general rule applies, Durfee and Van Cauwenberghe, as well as the Restatement (Second) of Judgments, note there are exceptions. See Durfee, 375 U.S. at 114, 84 S.Ct. 242 and Van Cauwenberghe, 934 F.2d at 1059 (both citing Kalb v. Feuerstein, 308 U.S. 433, 438-44, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (holding that a state court foreclosure proceeding was preempted by bankruptcy laws, making the state proceeding subject to collateral attack)); Restatement (Second) of Judgments § 12(2) (exception exists where, "[A]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government"). The present case, like Kalb, involves a state court decision in contravention of federal preemption over bankruptcy. If allowed to stand, the decision of the California state courts would "substantially infringe the authority" of the bankruptcy court.[6]
 
 
 29
 Accordingly, even if the state courts implicitly decided the jurisdictional question, their decision is not entitled to preclusive effect. We hold the bankruptcy court erred in dismissing Gruntz's complaint on the basis of collateral estoppel.
 
 
 30
 For similar reasons, the district court erred in affirming the bankruptcy court's dismissal on the basis of the Rooker-Feldman doctrine. In Rooker, the Supreme Court held that where the state "court had jurisdiction of both the subject matter and the parties; that a full hearing was had therein; that the judgment was responsive to the issues, and that it was affirmed by the Supreme Court of the State on an appeal ... no court of the United States other than this [the Supreme] Court could entertain a proceeding to reverse or modify the judgment for errors of that character." Rooker, 263 U.S. at 415-16, 44 S.Ct. 149. Sixty years later, the Court held that the district courts lacked jurisdiction to consider allegations which "are inextricably intertwined" with a state court's final judgment. Feldman, 460 U.S. at 486-87, 103 S.Ct. 1303 (1983).[7] However, the state courts' subject matter jurisdiction was not at issue in either Rooker or Feldman. Here it is, and as we have concluded, the state court did not have jurisdiction to decide the reach of the automatic stay. In this circumstance, the state court decision is not entitled to preclusive effect under Rooker-Feldman because the state court decision is void ab initio. See In re James, 940 F.2d 46, 52 (3d Cir.1991) (citing Kalb, 308 U.S. at 438-40, 60 S.Ct. 343) ("There appears to be only one exception to this hard and fast rule of federal-state comity [Rooker-Feldman ], and it comes into play only when the state proceedings are considered a legal nullity and thus void ab initio."); see also In re Audre, Inc., 216 B.R. 19, 29 (9th Cir. BAP 1997).
 
 
 31
 This is not a new exception to the Rooker-Feldman doctrine or to the general rule that we give full faith and credit to state court jurisdictional decisions. We have previously reviewed state court judgments based on allegations that the judgments were void because they violated the automatic stay in bankruptcy. See In re Hucke, 992 F.2d 950, 953 (9th Cir.1993) ("In sum, if the present state [probation] revocation proceeding constituted collection efforts, then it would violate the automatic stay and would be void."); In re Shamblin, 890 F.2d 123, 127 (9th Cir.1989) (declaring a tax-foreclosure judgment and sale void as violative of the automatic stay); Stringer, 847 F.2d at 551-53 (order increasing child support payments was void because it violated the automatic stay).
 
 
 32
 We conclude we may review Gruntz's state court convictions to determine whether they are void due to the state courts' lack of jurisdiction to decide whether the automatic stay precluded Gruntz's prosecution.
 
 
 33
 The County does not contest the proposition that if indeed the criminal prosecutions violated the automatic stay, they were void. See Stringer v. Huet (In re Stringer), 847 F.2d 549, 551 (9th Cir.1988) ("Any proceedings in violation of the automatic stay are void."). And Gruntz does not contend there was any error in the state criminal prosecutions except a violation of the automatic stay. The validity of the criminal prosecutions, therefore, turns precisely on whether the County's actions in prosecuting Gruntz violated the automatic stay. This question has never been answered by a competent court. The state court, which was not competent to answer the question, purported to do so; the bankruptcy court, which was competent to answer the question, did not.
 
 
 34
 The County asks that we answer the question based on the facts before us. The County argues that as a matter of law we can conclude the state's criminal prosecutions did not violate the automatic stay because criminal prosecutions are expressly excluded from the reach of the automatic stay by 11 U.S.C. § 362(b)(1) and (4). Subsection (b)(1) excludes from the automatic stay criminal proceedings against a debtor; subsection (b)(4) excludes "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." We reject the County's argument. A criminal prosecution is not automatically excluded from the reach of the automatic stay. If the purpose of the prosecution is to "collect, assess or recover a claim" against a debtor in bankruptcy, the prosecution will violate the automatic stay. See Hucke, 992 F.2d at 953 (quoting 11 U.S.C. § 362(a)(6)).
 
 
 35
 Hucke presented essentially the same issue we now face, i.e., whether a state criminal proceeding undertaken while an automatic stay was in force was actually an attempt to collect money. Id. In order to determine whether the automatic stay applied to Hucke's probation revocation hearing, we looked beyond the title of that proceeding to determine its true nature. Id.
 
 
 36
 Certainly, the mere institution of a probation revocation proceeding, without more, would constitute a continuation of a criminal action against the defendant/debtor and, thus, be exempt from the automatic stay.... However, if the probation hearing had as its aim the collection of the fine, then it would run afoul of § 362(a)(6), which stays acts intended to "collect, assess or recover a claim" against the debtor. In sum, if the present state revocation proceeding constituted collection efforts, then it would violate the automatic stay and would be void.
 
 
 37
 Id.
 
 
 38
 Hucke had pleaded guilty to rape and had been sentenced in state court to five years probation on the condition that he pay over $20,000 in restitution and fines. Id. at 951. The state court retained jurisdiction to impose a 36-month prison sentence if Hucke violated the conditions of his probation. Id. Hucke later filed for bankruptcy protection without having paid any of the court ordered restitution or fines. Id. Because Hucke was in violation of his probation conditions, the state sought to revoke his probation. At the probation revocation hearing the court revoked Hucke's probation and imposed the 36-month prison sentence. Hucke then filed an adversary proceeding in his Chapter 13 case seeking to void the revocation of his probation, contending that revocation violated the automatic stay.
 
 
 39
 This court, reviewing the case, looked beyond the apparent criminal nature of the proceedings to determine if the proceedings violated the automatic stay. Id. at 953. We concluded the automatic stay did not apply because the state court had "made it very clear during the revocation proceedings that [it] was not interested in collecting the fine" and had in fact "rejected the offer of Hucke's counsel to restructure the Chapter 13 plan so that payments on the compensatory fine would come close to one hundred percent of the total amount imposed." Id.
 
 
 40
 Gruntz, like Hucke, faced criminal proceedings as a result of his failure to pay a court imposed financial obligation. The critical difference, however, is that contrary to the facts in Hucke which dispelled any notion that the proceeding was intended to recover money, Gruntz alleges that the County threatened to prosecute him unless he paid the back child support, and then offered a suspended sentence if he would pay the money he owed. These allegations, if proved, would tend to support a finding that Gruntz's criminal prosecution for failure to support his children was intended as a debt collection action. If that should be the case, neither the exception to the automatic stay for criminal proceedings provided by subsection 362(b)(1), nor the exception for a proceeding by a governmental unit to enforce its police or regulatory power provided by subsection 362(b)(4), would apply. See Hucke, 992 F.2d at 953. Because the bankruptcy court has not yet held a hearing to determine the purpose of the criminal prosecutions, we have no record upon which to decide this critical question, and we decline to do so.
 
 
 41
 The County argues alternatively that under 11 U.S.C. § 362(b)(2), its criminal prosecutions are excluded from the automatic stay because they were proceedings for the "collection of support from property that is not property of the estate." As Gruntz points out, however, there is nothing in the record from which we can determine whether the County's "collection" actions were aimed only at non-estate property. The parties dispute when Gruntz's bankruptcy proceeding was actually converted from Chapter 13 to Chapter 11. Gruntz contends the conversion did not take place until September, 1990 when the bankruptcy judge signed the conversion order. The County, however, contends the bankruptcy judge converted the proceedings to Chapter 11 in December, 1989. The timing of the conversion is relevant because a bankruptcy estate in a Chapter 13 proceeding "includes earnings of the debtor acquired after filing ... but before disposition of the case." Carver v. Carver, 954 F.2d 1573, 1577 (11th Cir.1992); In re Suarez, 149 B.R. 193, 195 (Bankr.D.N.M.1993) ("The automatic stay protects all property of the estate and prohibits any proceedings against property of the estate, even when the proceedings are designed to enforce alimony or support obligations.") (quotation omitted).
 
 
 42
 Even accepting arguendo the County's contention that the conversion occurred in December, 1989, we have no evidence before us to suggest that the County's alleged collection actions were directed only at non-estate assets or that Gruntz had any non-estate assets with which to pay the arrearages the County sought.
 
 
 43
 Because we do not have before us the necessary facts to determine whether an exception to the automatic stay applied to the criminal proceedings against Gruntz, and because it is not our function in any event to make factual findings, we must remand this case for further proceedings.
 
 II
 The 1989 Modification Order
 
 44
 In 1989, the state court modified Gruntz's child support order by adding a 2% service charge onto his semimonthly payments. This occurred while the automatic stay was in place. Gruntz argues that the bankruptcy court, as affirmed by the district court, erred by dismissing his complaint without leave to amend to more clearly allege that the 1989 modification order violated the automatic stay.
 
 
 45
 The question whether the 1989 modification order violated the automatic stay depends upon whether that order had an economic impact on the debtor; if it did, it is not excluded from the automatic stay. Stringer, 847 F.2d at 552-53 (modification order violated the automatic stay by increasing support obligations by $100). Gruntz asserts that if given the opportunity he could clearly allege that the 1989 modification order resulted in an increase in his support obligation. He contends he would allege that the modification order significantly increased the amount of his arrearage from $5,100 to approximately $17,000 and that the state court added a 2% service charge onto his semimonthly payments.
 
 
 46
 Although the modification order did increase Gruntz's monthly child support payments by adding a 2% service charge, the order makes no reference to any arrearages. Accordingly, if the modification order violates the automatic stay, it does so only to the extent that it requires a 2% increase in Gruntz's support obligations to cover the County's expenses of receiving and disbursing support payments through the D.A.'s office. Because Gruntz could allege that the 1989 modification order increased his support obligation, his complaint should not have been dismissed without leave to amend.[8] See Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996).
 
 CONCLUSION
 
 47
 The bankruptcy court erred in dismissing Gruntz's complaint based on collateral estoppel principles. Determinations regarding the applicability of the automatic stay in bankruptcy are exclusively within the purview of the federal courts. Accordingly, neither collateral estoppel nor the Rooker-Feldman doctrine precludes the bankruptcy court from determining whether Gruntz's state court criminal prosecutions were void because they violated the automatic stay.
 
 
 48
 With regard to Gruntz's allegation that the County impermissibly increased his child support obligation in violation of the automatic stay, the bankruptcy court erred by dismissing Gruntz's complaint without leave to amend to permit Gruntz to allege that the state court's addition of the 2% service fee onto his already existing support obligation was a modification of that obligation in violation of the automatic stay.
 
 
 49
 We REVERSE and REMAND to the district court for remand to the bankruptcy court with directions that the bankruptcy court conduct further proceedings consistent with this opinion.
 
 
 50
 REVERSED and REMANDED.
 
 FLETCHER, Circuit Judge, Dissenting:
 
 51
 The majority frames the question before us as "whether the California state courts had jurisdiction to determine if the state criminal proceedings against Gruntz were excluded from the automatic stay in bankruptcy." Majority Opinion at 1023-24. I see the issue differently. For me, the question is whether a state may prosecute individuals in its state courts for conduct that is criminal under state law, without first obtaining permission from the federal bankruptcy courts. Because I think it beyond cavil that this question must be answered in the affirmative, I respectfully dissent and would affirm the district court.
 
 I.
 
 52
 The bankrupt, Gruntz, was convicted in Los Angeles County Municipal Court for failing to make child support payments, a crime under state law. The California Court of Appeal affirmed the conviction. The prosecution and conviction were indisputably within the normal criminal jurisdiction of the state courts. In the course of hearing the case, the municipal court determined that the automatic stay issued by a federal bankruptcy court pursuant to the defendant's ongoing Chapter 11 bankruptcy proceeding did not apply to the criminal proceeding in state court. See 11 U.S.C. § 362(a)(1).
 
 
 53
 While I agree with the municipal court's conclusion that the automatic stay did not apply to the case before it, that is not the source of my dissent. Rather, I dissent because I believe the Municipal Court had jurisdiction to decide whether the action before it was subject to the stay, and because I think we may not now entertain a collateral attack on that judgment. See Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (holding that "a judgment is entitled to full faith and credit--even as to questions of jurisdiction--when the second court's inquiry discloses that those questions have been fully and fairly litigated and fairly decided in the court which rendered the original judgment"); Rooker v. Fidelity Trust, 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486-87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (holding that the lower federal courts lack jurisdiction to consider claims that are "inextricably intertwined" with the final judgment of a state court).
 
 
 54
 The majority holds, however, that the Rooker-Feldman doctrine and general rules of preclusion do not apply here because state courts are simply without jurisdiction to determine the scope of bankruptcy's automatic stay provision. This conclusion is the product of a legal and logical non sequitur. The majority is of course correct to note that Congress has granted original and exclusive jurisdiction to the district courts for all cases in bankruptcy under title 11. See Majority Opinion at 1024 (citing 28 U.S.C. § 1334(a)). I also agree with the judgment expressed in the legislative history that "[t]he automatic stay is one of the fundamental debtor protections provided in the bankruptcy laws." H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6296. I do not concur, however, in the majority's conclusion that the importance of the automatic stay somehow precludes state courts from determining whether suits otherwise under their jurisdiction fall within one of the federal statutory exceptions to the automatic stay. It simply does not follow from the exclusivity of federal bankruptcy jurisdiction that only the federal bankruptcy courts can determine the applicability of the automatic stay.
 
 II.
 
 55
 According to the majority, "[i]f allowed to stand, the decision of the California state courts would 'substantially infringe the authority' of the bankruptcy court." Majority Opinion at 1025-26 (quoting Restatement (Second) of Judgments § 12(2)). Not so. Other Circuits have recognized that courts other than the bankruptcy court can determine the applicability of the automatic stay without jeopardizing the authority or effectiveness of the bankruptcy courts. See, e.g., In re Baldwin-United Corp. Litigation, 765 F.2d 343 (2d Cir.1985); In re Taylor, 216 B.R. 366 (Bankr.S.D.N.Y.1998); In re Bona, 124 B.R. 11 (S.D.N.Y.1991); In re Mann, 88 B.R. 427 (Bankr.S.D.Fla.1988).
 
 
 56
 In In re Baldwin-United Corp. Litigation, 765 F.2d 343 (2d Cir.1985), the Second Circuit held that "[t]he court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay." Id. at 347. This rule applies with full force to the case before us, and I would adopt it. See In re Taylor, 216 B.R. at 369 ("[Q]uestions about whether the Automatic Stay stays an action or proceeding can be resolved either in the Bankruptcy Court or the state court where the case is pending. State courts retain jurisdiction to decide whether they have jurisdiction."). The majority finds Baldwin inapposite because in that case a federal district court, not a state court, determined whether the automatic stay applied to the action before it. The majority is right about the distinction, but we differ as to its significance.
 
 
 57
 Underlying the majority's opinion is the notion that if the bankruptcy courts are deprived of exclusive authority to determine the applicability of automatic stays, bankruptcy proceedings will be frustrated by other proceedings before other courts. This argument focuses on the need for exclusive jurisdiction in the bankruptcy courts, not in the federal courts in general. The rationale is simple: in order to administer bankruptcy estates effectively, bankruptcy courts must have the sole power to determine which matters fall under its statutory mandate. Otherwise, the majority implies, debtor reorganizations may be undermined by concurrent proceedings in other courts over which the bankruptcy courts have no control. For this view to have any merit, it must require that all non-bankruptcy courts abstain from interpreting the applicability of automatic stays. In this sense, the fact that Baldwin involved a federal district court determining the automatic stay's applicability does not meaningfully distinguish it from the case at bar. If the state proceeding in this case threatened the authority of the bankruptcy court, then by the same logic so did the proceeding in the federal district court in Baldwin. Experience shows, however, that Baldwin poses no threat to the integrity of bankruptcy proceedings.
 
 
 58
 Baldwin was decided by the Second Circuit in 1985. Since then, the bankruptcy courts in that jurisdiction give no indication of having been hamstrung by Baldwin. In fact, the Southern District of New York continues to be recognized as "the leading jurisdiction for the filing of 'mega-cases' " in bankruptcy. C.R. Bowles & John Egan, The Sale of the Century or a Fraud on Creditors?: The Fiduciary Duty of Trustees and Debtors in Possession Relating to the 'Sale' of a Debtor's Assets in Bankruptcy, 28 U. Mem. L.Rev. 781, 810 & n. 154 (1998) (defining "mega-cases" as cases involving debtors with assets of at least $100 million). In short, the concerns animating the majority's position have simply not been borne out by experience in the wake of Baldwin. There is no reason to believe that deferring to the municipal court's judgment in this case will produce any more worrisome results.III.
 
 
 59
 The majority's holding, in contrast, may have serious consequences. The majority holds that "the state court did not have jurisdiction to decide the reach of the automatic stay." Majority Opinion at 1026. Without regard to whether the state court decided that the automatic stay actually applied or not, the majority concludes that the "state court decision is void ab initio. " Id. Elsewhere in the opinion, the majority re-characterizes its holding as concluding merely that "we may review Gruntz's state court convictions to determine whether they are void due to the state courts' lack of jurisdiction to decide whether the automatic stay precluded Gruntz's prosecution." Id. at 1026-27. This re-characterization seems to imply that the majority would leave Gruntz's conviction untouched if it found that the municipal court was right in concluding that the prosecution was not subject to the automatic stay. Under the logic of the rest of the majority's opinion, however, this cannot be so.
 
 
 60
 To find, as the majority does, that the state court proceeding was void ab initio for lack of jurisdiction is to conclude that the proceeding was void "[f]rom the beginning; from the first act; from the inception." Black's Law Dictionary 6 (5th ed.1979). If the proceeding was void in that sense, the conviction cannot stand. It matters not whether the state court was correct in its determination that the automatic stay did not apply to the prosecution. The state court was simply without jurisdiction to make that decision. Whether the state court was correct or not cannot affect the validity of a proceeding that was void from the start. Thus, by the majority's logic Gruntz's conviction must be vacated regardless of whether the state court correctly interpreted the scope of the stay.
 
 
 61
 The consequences for future state court cases are even more drastic. If, as the majority maintains, state courts are without jurisdiction to determine whether cases before them fall under a bankruptcy court's automatic stay, then this is not a jurisdictional issue that can be waived if not raised by the parties. It is a question that must be answered at the outset of every case, just as subject matter jurisdiction must be ascertained in the federal courts before proceeding. According to the majority, however, the state courts are precluded from answering the question themselves. What, then, would the majority have state courts do? Must all state cases now begin with the court seeking certification from a bankruptcy court that it is okay to proceed? After all, if state courts are without jurisdiction to determine whether automatic stays apply to the cases before them, they are also presumably unable even to determine if a relevant bankruptcy proceeding exists anywhere in the country. Even in obvious cases--homicide prosecutions, for example--state courts are presumably precluded, if called upon, from making the easy determination that no bankruptcy proceeding bars going forward with the prosecution.
 
 
 62
 The way out of this quagmire is clear: recognize that state courts have jurisdiction to determine their own jurisdiction. See In re Taylor, 216 B.R. at 369 ("State courts retain jurisdiction to decide whether they have jurisdiction") (citing In re Baldwin, 765 F.2d at 347).
 
 IV.
 
 63
 The automatic stay is a creature of federal statute, and exists to effectuate exclusive federal jurisdiction over bankruptcy proceedings. But to say that only federal bankruptcy courts are competent to determine the applicability of the stay is to suggest that state courts have no role in interpreting federal law. Just the opposite is the case. This country was founded in part on the principle that the states would be "constituent and essential parts of the federal government." The Federalist No. 45 (James Madison). As part of that plan, the Constitution requires that state courts, no less than their federal counterparts, faithfully interpret and apply "the Laws of the United States which shall be made in Pursuance [of the Constitution]." U.S. Const. art. VI (noting that the "Judges of every State shall be bound [by the laws and Constitution of the United States], any Thing in the Constitution or Laws of the State to the Contrary notwithstanding."). It is in part because of this requirement that Alexander Hamilton could confidently conclude that "the State courts would have a concurrent jurisdiction in all cases arising under the laws of the Union where it was not expressly prohibited." The Federalist No. 82 (Alexander Hamilton).
 
 
 64
 This is not a case where state court jurisdiction over the relevant issue is expressly prohibited. Although bankruptcy proceedings themselves are exclusively federal, jurisdiction to determine the scope of the automatic stay is not committed solely to the federal bankruptcy courts. The majority offers no convincing rationale for why state courts should not therefore exercise jurisdiction. Conversely, precluding state courts from determining the automatic stay's applicability risks compromising the daily workings of those courts. Because I would allow the state courts to adjudicate cases under their criminal laws without first obtaining the permission of federal bankruptcy judges, I respectfully dissent from the majority's opinion.
 
 
 
 [1]
 Because this is an appeal from the dismissal of a complaint for failure to state a claim, the facts taken from Gruntz's complaint are presumed to be true and all reasonable inferences are drawn in his favor. See In re Hunter, 66 F.3d 1002, 1004 (9th Cir.1995)
 
 
 [2]
 Gruntz does not allege whether he was prevented from establishing that he had actually paid all or some of his child support payments to the bankruptcy trustee, or whether he merely wanted to assert that he was under an order to pay the bankruptcy court and as a result this was a defense to the charge of failing to pay child support to his ex-wife or the D.A
 
 
 [3]
 Subsection (b)(2) of 11 U.S.C. § 362 was amended in 1994 to add as additional exclusions from the automatic stay, actions to establish paternity and actions to establish or modify alimony, maintenance and support orders. 11 U.S.C. § 362(b)(2)(A)(i) and (ii) (1994). However, these additional exclusions do not apply retroactively. See Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, § 702, 108 Stat. 4106 (1994); H.Rep. 103-835, 95th Cong. 2nd Sess. at 59, 1978 U.S. Code Cong. & Admin.News pp. 3340, 3368
 
 
 [4]
 An exception to exclusive jurisdiction exists if Congress specifically grants another court jurisdiction over certain subject matter, in which case the district courts have original but not exclusive jurisdiction. 28 U.S.C. § 1334(b). This exception does not apply in the present case
 
 
 [5]
 The stay was designed "to protect[ ] the relative position of creditors [and] ... shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." Stringer v. Huet (In re Stringer), 847 F.2d 549, 551-52 (9th Cir.1988)
 
 
 [6]
 The County suggests that the Second and Sixth Circuits "have concluded that state courts have jurisdiction to determine the applicability of the Bankruptcy Code's automatic stay." We disagree. Neither case the County relies on presented a question of state court jurisdiction. See NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934, 940 (6th Cir.1986) ("[T]he NLRB proceeded at its own risk. If it was later determined that the proceeding was not excepted from the automatic stay, the entire NLRB proceeding would be void ab initio as an act taken in violation of the stay."); In re Baldwin-United Corp. Litigation, 765 F.2d 343, 347 (2d Cir.1985) (federal district court had jurisdiction to determine its own jurisdiction in light of the automatic stay resulting from a separate bankruptcy case)
 
 
 [7]
 The Supreme Court considered the District of Columbia Court of Appeals to be equivalent to a state court. Feldman, 460 U.S. at 464, 103 S.Ct. 1303
 
 
 [8]
 As noted supra, n. 3, by the 1994 amendment to 11 U.S.C. § 362(b)(2), actions to modify support orders were added to the list of proceedings excluded from the automatic stay, but this 1994 amendment does not apply to the present case